11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

Wal-Mart
Stores, Inc.                                            

Appellant

Vs.                   No. 11-02-00113-CV B 
Appeal from Grayson County

Linda Ruth Surratt 

Appellee

 

This
appeal addresses the duty of a business owner/operator to protect its invitees
from conditions caused by a natural accumulation of frozen precipitation on its
parking lot.[1]  Linda Ruth Surratt suffered a serious ankle
injury when she slipped and fell on Wal-Mart=s parking lot.  The parking lot
was covered at the time by an accumulation of frozen precipitation caused by a
recent ice storm.  Citing cases from
other jurisdictions, Wal-Mart argues that it did not have a duty to protect its
invitees from the conditions caused by natural accumulation of frozen
precipitation on its parking lot.  We
agree.

                                                                Background
Facts

The
accident in question occurred on December 23, 1998, at one of Wal-Mart=s retail stores located in Grayson
County.   The record reflects that an
ice storm had occurred in the area on this date.   The event records of the National Climate Data Center describe
the ice storm as follows: 

A strong arctic cold front moved through
North Texas on [December 21, 1998] bringing freezing temperatures to all of
North Texas by the morning of [December 22, 1998].  Southwest winds aloft produced overrunning conditions, resulting
in cloudy skies and a mixture of freezing rain, sleet, and snow.  The precipitation began in the western part
of North Texas and spread eastward covering the entire area by [December 23, 1998].  At various times, all North Texas counties
had icy streets, bridges, overpasses, and highways.  The ice caused at least 2,000 accidents, mainly in the
Dallas/Fort Worth Metropolitan area, killing six persons, closing many
highways, and cancelling over 400 flights at the Dallas/Fort Worth
International Airport.  Two homeless
persons died of hypothermia, and dozens of people were injured from falling on
the ice.

 

www.ncdc.noaa.gov.

Surratt
worked as a manager of a home improvement store.   She was not scheduled to work on December 23, 1998.   She decided to go to work at approximately
11:00 a.m., however, because several employees of the home improvement store
were unable to report for duty as a result of the ice storm.  Surratt stopped at Wal-Mart=s store on her way to work in order to
purchase deicer.  Surratt testified that
she knew prior to leaving her home that conditions were bad as a result of the
ice storm.  She drove to the Wal-Mart
store in her four-wheel drive vehicle, and she wore hiking boots in order to
deal with the treacherous conditions.   

Surratt
parked approximately 30 feet from the store=s entrance.  She observed that
the parking lot was Aslushy@ because the frozen precipitation which
covered it had begun to melt.  Surratt
made one trip inside the store and then returned to her vehicle without
incident.  She slipped and fell in the
parking lot while returning to her vehicle after making a second trip inside
the store.  The record shows that
Wal-Mart did not take any measures to either remove the frozen precipitation
from its parking lot or lessen the risk posed by the frozen precipitation.

The jury
determined that the negligence of both Wal-Mart and Surratt proximately caused
the occurrence in question.  The jury
apportioned 70 percent of the responsibility for the occurrence to Wal-Mart=s negligent conduct and the remaining 30
percent to Surratt=s
negligent conduct.  After making the
appropriate reduction for the percentage of responsibility attributed to
Surratt, the trial court entered judgment in Surratt=s favor in the amount of $196,175.  We reverse and render.

                                                                  Issues
Presented

Wal-Mart
asserts two issues on appeal.  Wal-Mart
presents its no-duty argument in the first 
issue.  In its second issue,
Wal-Mart attacks the evidence supporting the jury=s award of $150,000 for Surratt=s past medical expenses.  We do
not address Wal-Mart=s
second issue because our ruling on the first issue is dispositive of this
appeal.

                                                               Standard
of Review

Wal-Mart
filed a motion for judgment notwithstanding the verdict which alleged in part
that the jury=s liability finding against it was not
supported by legally sufficient evidence. 
Wal-Mart contends that the trial court erred in denying its motion for
judgment notwithstanding the verdict. 
TEX.R.CIV.P. 301 provides that a court may render judgment non obstante
veridicto (judgment notwithstanding the verdict) if a directed verdict would
have been proper and may disregard any jury finding that has no support in the
evidence.   A trial court may grant a
judgment notwithstanding the verdict if there is no evidence to support one or
more of the jury findings on issues necessary to liability.  Brown v. Bank of Galveston, National
Association, 963 S.W.2d 511, 513 (Tex.1998).

We review
the denial of a motion for judgment notwithstanding the verdict under a legal
sufficiency standard.   Navarette v.
Temple Independent School District, 706 S.W.2d 308, 309 (Tex.1986).   In reviewing the legal sufficiency of the
evidence, an appellate court must consider all the evidence in the light most
favorable to the prevailing party and must indulge every reasonable inference
in favor of the prevailing party. 
Associated Indemnity Corporation v. CAT Contracting, Inc., 964 S.W.2d
276, 285‑86 (Tex.1998); Merrell Dow Pharmaceuticals, Inc. v. Havner, 953
S.W.2d 706, 711 (Tex.1997), cert. den=d, 523 U.S. 1119 (1998).  An
appellate court will sustain a no‑evidence issue when:  (1) the record discloses a complete absence
of evidence of a vital fact; (2) the court is barred by rules of law or of
evidence from giving weight to the only evidence offered to prove a vital fact;
(3) the only evidence offered to prove a vital fact is no more than a mere
scintilla; or (4) the evidence establishes conclusively the opposite of the vital
fact.  Uniroyal Goodrich Tire Company v.
Martinez, 977 S.W.2d 328, 334 (Tex.1998). 
If there is more than a scintilla of evidence to support the jury=s findings, the motion for judgment
notwithstanding the verdict was properly denied.  Mancorp, Inc. v. Culpepper, 802 S.W.2d 226, 228 (Tex.1990).

                                                                           Duty








The
threshold inquiry in a negligence case is duty.  Greater Houston Transportation Co. v. Phillips, 801 S.W.2d 523,
525 (Tex.1990); El Chico Corporation v. Poole, 732 S.W.2d 306, 311 (Tex.1987).  Tort liability depends on both the existence
and the violation of a duty.  Greater
Houston Transportation Co. v. Phillips, supra at 525; El Chico Corporation v.
Poole, supra at 311.  Whether a duty
exists in a particular case is a question of law for the court to decide from
the facts surrounding the occurrence in question.  Texas Home Management, Inc. v. Peavy, 89 S.W.3d 30, 33
(Tex.2002);  Greater Houston Transportation
Co. v. Phillips, supra at  525.  As recently noted by the Texas Supreme Court
in Texas Home Management:  

The question of legal duty is a multifaceted
issue requiring us to balance a number of factors such as the risk and
foreseeability of injury, the social utility of the actor's conduct, the
consequences of imposing the burden on the actor, and any other relevant
competing individual and social interests implicated by the facts of the case.
Although the formulation and emphasis varies with the facts of each case, three
categories of factors have emerged: (1) the relationship between the parties;
(2) the reasonable foreseeability of harm to the person injured; and (3) public
policy considerations.  (Citations
omitted)

 

Texas Home Management,
Inc. v. Peavy, supra at 33-34.

We use the
same three Acategories of factors@which the supreme court used in  Texas Home Management to resolve
Wal-Mart=s Ano duty@ contention in this case.  The first element concentrates on the
relationship between the parties.  This
element does not support Wal-Mart=s contention as evidenced by the multitude of cases which recognize
that a premise owner/operator  generally
owes a duty to its business invitees to exercise reasonable care.  The second element examines the
foreseeability of harm to the person injured. 
This element also does not support Wal-Mart=s contention because of the obvious
foreseeabilility that someone will slip and fall on a parking lot covered by
frozen precipitation.  The success of
Wal-Mart=s no-duty contention is therefore dependent
upon the third element which focuses on public policy considerations.

With
respect to a slip-and-fall case, the owner/operator owes a duty to its invitees
to exercise reasonable care to protect them from dangerous conditions on the
premises known or discoverable to it. 
Wal-Mart Stores, Inc. v. Gonzalez, 968 S.W.2d 934, 936 (Tex.1998); Rosas
v. Buddies Food Store, 518 S.W.2d 534, 536‑37 (Tex.1975).  AHowever, a land possessor=s duty toward its invitee does not make the possessor an insurer of the
invitee=s safety.@ Wal-Mart Stores, Inc. v. Gonzalez, supra at 936;  McElhenny v. Thielepape, 155 Tex. 319, 285
S.W.2d 940, 941 (1956).  The liability elements
of a slip-and-fall case involving a business invitee are well-defined.  The invitee must prove:

(1) Actual
or constructive knowledge of some condition on the premises by the
owner/operator;

 

(2) That
the condition posed an unreasonable risk of harm;

 

(3) That
the owner/operator did not exercise reasonable care to reduce or eliminate the
risk; and

 

(4) That
the owner/operator's failure to use such care proximately caused the plaintiff=s injuries.

 

Wal-Mart Stores, Inc. v.
Gonzalez, supra at 936; Keetch v. Kroger Company, 845 S.W.2d 262, 264
(Tex.1992);  Corbin v. Safeway Stores,
Inc., 648 S.W.2d 292, 296 (Tex.1983).[2]  The issue of duty is addressed in the
foregoing liability elements by the question which asks if the condition posed
an Aunreasonable risk of harm.@  The
premises owner/operator only owes a duty to reduce or eliminate conditions
which pose an unreasonable risk of harm. 
CMH Homes, Inc. v. Daenen, 15 S.W.3d 97, 102-03 (Tex.2000).  Wal-Mart argues that it did not owe a duty
to Surratt because, as a matter of law, a natural accumulation of frozen
precipitation does not constitute a condition that poses an Aunreasonable risk of harm.@

                                               Massachusetts
Rule vs. Connecticut Rule








The issue
of a premise owner/operator=s duty to protect its invitees from an accumulation of frozen
precipitation located on its premises has been litigated extensively in states
that have colder climates.   A
comprehensive annotation of the manner in which other jurisdictions have dealt
with this issue is contained in Jay Zitter, J.D., Annotation, Liability of
Owner, Operator, or Other Parties, for Personal Injuries Allegedly Resulting
from Snow or Ice on Premises of Parking Lot, 74 A.L.R. 5th 49 (1999).  Our sister states have not resolved the duty
question uniformly.  Two conflicting
rules have been adopted by the other jurisdictions.  Zitter, supra at 80-83. 
The AMassachusetts@ or Anatural accumulation@ rule stems from the case of Woods v.
Naumkeag Steam Cotton Company, 134 Mass. 357 (1883).  Mucsi v. Graoch Associates Limited Partnership #12, 31 P.3d 684,
688 (Wash.2001).  Under the AMassachusetts@ rule, a premises owner/operator has no duty to protect invitees from
conditions caused by natural accumulations of snow and ice.  Mucsi v. Graoch Associates Limited
Partnership #12, supra at 688.  This
rule is based upon the principle that owners/operators would be greatly
burdened if they had such a duty.  Mucsi
v. Graoch Associates Limited Partnership #12, supra at 688.  The AConnecticut@ rule
traces its origin to the case of Reardon v. Shimelman, 128 A. 705
(Conn.1925).  The AConnecticut@ rule rejects the distinction afforded by the AMassachusetts@ rule for natural accumulations of snow and ice by holding that an
owner/operator has a general duty to remove or eliminate all dangerous
conditions on the premises irrespective of their source.  Mucsi v. Graoch Associates Limited
Partnership #12, supra at 688.  

Legal treatises
recognize the AMassachusetts@ rule as the traditional rule and the AConnecticut@ rule
as the modern or Arestatement@ rule. 
62A AM. JUR. 2D Premises Liability '' 699-701 (1990).  There are at
least four reported cases applying Texas law which have dealt with
slip-and-fall injuries occurring on frozen precipitation.[3]  None of these cases discussed the
application of either the AMassachusetts@ or AConnecticut@ rules.  Wal-Mart argues that
Texas should adopt the AMassachusetts@
rule.  Our review of the public policy
considerations supporting the AMassachusetts@ rule
leads us to the conclusion that a premise owner/operator should not have a duty
to protect its invitees from a natural accumulation of frozen precipitation
occurring on its parking lots. 

The
supreme court of Wyoming in Selby v. Conquistador Apartments, Ltd., 990 P.2d
491, 494 (Wyo.1999), discussed the rationale supporting the AMassachusetts@ rule:

The justification for the
natural-accumulation rule comports with the factors to be considered in
determining the existence of a duty.  The
magnitude of the burden on [the] defendant to prevent injuries from snow or ice
is great.  As noted above, natural
winter conditions make it impossible to prevent all accidents.  The plaintiff is in a much better position
to prevent injuries from ice or snow because the plaintiff can take precautions
at the very moment the conditions are encountered.  Even if the plaintiff is unaware of the ice or snow he happens to
slip on, he may be charged with knowledge that ice or snow is a common hazard
in winter, one which he must consistently guard against....[N]o justification
exists for imposing on a property owner a duty to protect invitees from hazards
which are naturally occurring and identical to those encountered off of the
premises.

 

(Quoting Eiselein v. K-Mart,
Inc., 868 P.2d 893, 897 (Wyo.1994)). 
The frequency of snowstorms and the duration of cold temperatures have
been cited as factors supporting the AMassachusetts@ rule
in northern states.  See Eiselein v.
K-Mart, Inc., supra at 897 (citing 62A AM. JUR. 2D Premises Liability ' 699 (1990)).  The effort required to remove frozen precipitation from parking
lots in Texas while temperatures remain near or below freezing would appear to
be the same as is required in northern states. 
Due to infrequency of frozen precipitation in our warmer climate, it
could be argued that the burden of clearing a frozen parking lot in Texas might
be greater because states with colder climates typically have more resources
for combating frozen precipitation. 
Furthermore, most accumulations of frozen precipitation in Texas
dissipate without human intervention in a relatively short period of time.  The evidence in this case indicates that the
incident occurred after the frozen precipitation had already started to
melt.  

We are
reluctant to require a premises owner/operator to expend a great deal of
physical and financial effort to protect its invitees from a naturally
occurring condition which usually disappears on its own in a short period of
time.  While the premises owner/operator
might avoid this burden by closing its business during times of bad weather,
the public is better served if businesses are able to remain open in order to
supply consumers with needed goods and services during times of harsh weather
conditions.  As noted previously,
Surratt shopped at Wal-Mart for the purpose of purchasing a deicer product to
alleviate the adverse conditions caused by frozen precipitation. 








There are
reported Texas cases which have held that particular conditions occurring
naturally on real property did not constitute unreasonably dangerous
conditions.  In Brownsville Navigation
District v. Izaguirre, 829 S.W.2d 159, 160-61 (Tex.1992), the plaintiffs
alleged that Aplain dirt@ which turned to mud when rain occurred constituted an unreasonably
dangerous condition.  The court rejected
this condition by holding that plain dirt which ordinarily becomes soft and
muddy when wet is not an unreasonably dangerous condition of property as a
matter of law.  Brownsville Navigation District
v. Izaguirre, supra at 160.  The
plaintiff in Johnson County Sheriff=s Posse, Inc. v. Endsley, 926 S.W.2d 284, 285 (Tex.1996), alleged that
the existence of rocks on the dirt floor of a rodeo arena constituted an
unreasonably dangerous condition.  The
court held that, Aas a
matter of law, a small rock or clod in rodeo arena dirt is not an unreasonably
dangerous condition.@  Johnson County Sheriff=s Posse, Inc. v. Endsley, supra at 286.  Camp v. J. H. Kirkpatrick Co., 250 S.W.2d
413, 418 (Tex.Civ.App. B San Antonio 1952, writ ref=d n.r.e.), is another Texas case which held that a naturally occurring
condition (rain on an exterior entranceway) did not constitute an unreasonably
dangerous condition.  The court stated, AThere is no duty on a proprietor to stay the
elements.@  

In
reaching this decision, we are mindful of the holding reached in Furr=s, Inc. v. Logan, 893 S.W.2d 187 (Tex.App. -
El Paso 1995, no writ).  The plaintiff
slipped on an accumulation of ice in a grocery store=s parking lot.  Furr=s,
Inc. v. Logan, supra at 189.   There was
an allegation that the ice formed as a result of water leaking from a vending
machine during cold weather.  Furr=s, Inc. v. Logan, supra at 189.  Citing Brownsville Navigation District,
the grocery store argued that it did not owe a duty because an accumulation of
ice or water on the ground cannot be an unreasonably dangerous condition.  Furr=s, Inc. v. Logan, supra at 190-91. 
The El Paso Court of Appeals rejected the grocery store=s argument by holding that Brownsville
Navigation District does not stand for the proposition that a natural
condition can never be the basis of premises liability.  Furr=s, Inc. v. Logan, supra at 191.








Furr=s, Inc. is distinguishable both factually and analytically from this
case.  From a factual perspective, Furr=s, Inc. did not involve a natural accumulation of frozen precipitation.  To the contrary, the ice formed as a result
of water leaking from a vending machine. 
Furr=s, Inc. v. Logan, supra at 189. Furthermore, the
court did not analyze the policy implications of either the AMassachusetts@ or AConnecticut@ rules.

It should
also be noted that the Fort Worth Court of Appeals has recently issued an
opinion which suggests that Brownsville Navigation District and Johnson
County Sheriff=s
Posse, Inc. should be
narrowly construed.  The plaintiff in
Rape v. M. O. Dental Lab, 95 S.W.3d 712, 713 (Tex.App. B Fort Worth 2003, pet=n filed), alleged that she slipped and fell
on a Aslippery mud substance@ located on a sidewalk.  She alleged that the accumulation of the
slippery mud substance on the sidewalk constituted an unreasonably dangerous
condition.  Rape v. M. O. Dental Lab,
supra at 713-14.  In granting the
premises owner=s/operator=s motion for summary judgment, the trial court determined that no
dangerous condition existed on the premises as a matter of law.  Rape v. M. O. Dental Lab, supra at 714.  The plaintiff argued on appeal that there
was a genuine issue of fact as to whether the slippery mud substance was a
condition posing an unreasonable risk of harm. 


The Fort
Worth Court of Appeals analyzed the holdings in Brownsville Navigation
District and Johnson County Sheriff=s Posse, Inc. in reaching its decision to reverse the
summary judgment.  It distinguished
those cases on the basis that they did not involve a man-made, paved
surface.  Rape v. M. O. Dental Lab,
supra at 717-18.  The court additionally
cited Furr=s,
Inc. in support of its
conclusion that Brownsville Navigation District and Johnson County
Sheriff=s Posse, Inc. should be narrowly construed.  Rape v. M. O. Dental Lab, supra at 718.  

The
condition of the premises considered in M. O. Dental Lab is much
different than the condition at issue in this appeal.  M. O. Dental Lab involved a small amount of a slippery mud
substance deposited on a portion of a parking lot.  Rape v. M. O. Dental Lab, supra at 713.  This case involves a condition which affected a wide area that
included the premises owner=s/operator=s
entire parking lot.  The public policy
considerations are significantly different for a condition which affects a wide
area as opposed to a condition which only affects an isolated, small area.  








We do not
rely on Brownsville Navigation District and Johnson County Sheriff=s Posse, Inc. for the broad proposition that a naturally
occurring condition can never be the basis of a premises liability claim.  Instead, we cite these cases as examples of
Texas courts recognizing that, in some instances, conditions occurring naturally
on real property are not unreasonably dangerous.  The fact that a particular condition occurs naturally is
significant to our analysis because the premises owner/operator is unable to
prevent the condition from occurring.  

                                                                     Our
Holding

We hold that
a premises owner/operator does not have a duty to protect its invitees from
conditions caused by a natural accumulation of frozen precipitation on its
parking lot because such an accumulation does not constitute an unreasonably
dangerous condition.  We expressly limit
our Ano duty@ holding to the premises owner=s/operator=s
parking lot.  The question of the duty
owed with respect to natural accumulations of frozen precipitation occurring on
sidewalks, entryways, and other areas intended for pedestrian traffic is not
before us.  

                                                                      Our
Ruling

There is
no evidence in the record that Surratt slipped and fell on anything other than
a natural accumulation of frozen precipitation in Wal-Mart=s parking lot.  In light of our Ano duty@ holding, there is no evidence that Wal-Mart
failed to exercise reasonable care to reduce or eliminate the risk caused by a
condition posing an unreasonable risk of harm. 
Thus, the trial court erred in denying Wal-Mart=s motion for judgment notwithstanding the
verdict.  Wal-Mart=s first appellate issue is sustained.  

The
judgment of the trial court is reversed, and judgment is rendered that Linda
Ruth Surratt take nothing.  

 

TERRY
McCALL

JUSTICE

 

April 10, 2003

Panel consists of: Arnot, C.J., and

Wright, J., and McCall, J.











     [1]As used in this opinion, the term Afrozen precipitation@
includes the various forms of precipitation which either fall to earth in a
frozen state or become frozen after falling to the earth, including snow,
sleet, freezing rain, freezing drizzle, ice, or a combination of these forms of
precipitation.





     [2]The negligence question which the trial court submitted
to the jury contained the following instruction: 

 

With respect to the condition of the premises, Wal-Mart
was negligent if: 

 

a.  the
condition posed an unreasonable risk of harm, and  

b.  Wal-Mart
knew or reasonably should have known of the danger, and 

c.  Wal-Mart failed to exercise
ordinary care to protect Linda Ruth Surratt from the danger, by both failing to
adequately warn Linda Ruth Surratt of the condition and failing to make that
condition reasonably safe.  





     [3]Pope v. Holiday Hills, Inc., 464 F.2d 1303, 1304 (5th
Cir. 1972)(applying Texas law); Furr=s
Inc. v. Logan, 893 S.W.2d 187 (Tex.App. B El
Paso 1995, no writ); Hall v. Safeway Stores, Inc., 360 S.W.2d 536 (Tex.Civ.App.
B Eastland 1962, writ ref=d
n.r.e.); Fort Worth & D. C. Ry. Co. v. Hambright, 130 S.W.2d 436, 438
(Tex.Civ.App. B Amarillo 1939, writ dism=d
judgm=t cor.).