IN THE SUPREME COURT OF TEXAS









IN THE SUPREME COURT OF TEXAS

 

════════════

No. 03-0146

════════════

 

M. O. Dental Lab, Gerald W.
Carter, Michael K. Zuber and Lora Zuber, Petitioners

 

v.

 

Brenda Gail Rape, Respondent

 

════════════════════════════════════════════════════

On Petition for Review from the

Court of Appeals for the Second District of
Texas

════════════════════════════════════════════════════

 

 

PER
CURIAM

 

 

The issue in this premises liability case is
whether ordinary mud or dirt that accumulated naturally on a concrete slab
outside a business posed an unreasonable risk of harm.  Because we hold that, as a matter of law, it
did not, we reverse the court of appeals= judgment in part and remand this case
to the trial court.

Brenda Gail Rape filed a premises liability action
against M.O. Dental Lab, Charlie Smith, Gerald W. Carter, Michael K. Zuber, and Lora Zuber after she slipped
and fell on the pavement outside the M.O. Dental Lab.  Rape alleged that she parked her car along
the side of the business, and as she was walking from her car toward the
entrance of the building, she slipped and fell on a Aslippery
mud substance.@  She claimed the substance had accumulated on
the parking lot sidewalk.

Defendant Lora Zuber
stated in her deposition testimony that it had rained sometime before Rape=s arrival.  Zuber acknowledged
that, as a result of the rain, mud had accumulated on the concrete slab where
Rape fell.  Zuber
explained that no efforts were made to clear off the mud, as it would
eventually be washed or blown away by the weather.  Zuber claimed no
one else had ever informed her or anyone in the office about mud on the
concrete slab causing someone to slip.  When
asked, though, whether the mud was slippery to walk on, Zuber
replied, AI=m sure it is.@

The defendants, with the exception of Smith, who
was never served with citation, moved for summary judgment on the ground that
the slippery mud substance Rape complained about was not a condition posing an
unreasonable risk of harm.  The trial
court granted summary judgment on two grounds: (1) no dangerous condition
existed on the property as a matter of law; and (2) the defendants
committed no acts of negligence in relation to this accident.  Rape filed a motion for new trial arguing
that the evidence created a fact issue on both grounds.  The trial court denied the motion, and Rape
appealed.

Although the defendants did not affirmatively
contend in the court of appeals that the judgment was interlocutory and
therefore unappealable, they did observe in their
briefing that the judgment did not expressly dispose of Rape=s claim against Smith.  They asked the court of appeals to determine
whether it had appellate jurisdiction before proceeding to the merits of the
appeal.  The court of appeals, after concluding
that the trial court=s
judgment was final even though it did not specifically include Smith,[1] reversed
the order granting summary judgment.[2]  As to whether a Adangerous
condition@ existed
on the property, the court of appeals held that a fact issue existed with
respect to whether the mud that Rape slipped on was a condition posing an
unreasonable risk of harm.[3]  In so holding, the court distinguished Johnson
County Sheriff=s
Posse, Inc. v. Endsley[4] and
Brownsville Navigation District v. Izaguirre,[5] in which
this Court held that ordinary mud or dirt remaining Ain
its natural state and environment@
does not pose an unreasonable risk of harm as a matter of law, on the basis
that the mud in this case Aaccumulated
on a man-made surface.@[6]  The court of appeals further held that the
trial court erred in granting summary judgment on Rape=s
negligence claim because M.O. Dental Lab had not moved for summary judgment on
that ground.[7]  The defendants petitioned this Court for
review.

Neither party argues to this Court that the
summary judgment was not a final, appealable
order.  Nevertheless, we are obligated to
review sua sponte
issues affecting jurisdiction.[8]  In Lehmann
v. Har-Con Corp., we clarified the longstanding
general rule that A[a]
judgment is final for purposes of appeal if it disposes of all pending parties
and claims in the record.@[9]  The judgment in this case is entitled AOrder Granting Summary Judgment,@
and it recites in its entirety:

 

On the 22 day of June, 2001, the Court heard the
Motion for Summary Judgment filed by Defendant [sic], M O Dental Lab,
Gerald W. Carter, Michael K. Zuber and Lora Zuber, and the Court, having examined the pleadings and the
evidence finds that the following facts exist without substantial controversy:

 

1.         No dangerous condition existed on the property as a matter
of law; and

2.         The Defendant [sic] committed no acts of negligence in
relation to this accident.

 

It is therefore, ORDERED, ADJUDGED AND DECREED,
that JUDGMENT in this cause be entered against Plaintiff and that costs be
assessed against the Plaintiff[.]

 

Signed this the 22 day of June,
2001.

 

The court of appeals, citing our decision in Youngstown
Sheet & Tube Co. v. Penn,[10] held
that the trial court=s
order granting summary judgment was final for purposes of this appeal because
Smith was never served and the record contains no pleadings or motions filed by
Smith.[11]  In Penn, the trial court=s order granting summary judgment
disposed of all parties named in the petition except one.  The remaining party was never served with
citation and did not file an answer, and nothing in the record indicated that
the plaintiff in the case ever expected to obtain service upon the remaining
party.  We therefore held, AIn these
circumstances the case stands as if there had been a discontinuance as to [the unserved party], and the judgment is to be regarded as
final for the purposes of appeal.@[12]

This holding in Penn was not overruled,
expressly or otherwise, by Lehmann.[13]  We said in Lehmann
that A[t]o
determine whether an order disposes of all pending claims and parties, it may
of course be necessary for the appellate court to look to the record in the
case.@[14]  We continued, A[I]f
the record reveals that there is only one plaintiff and only one defendant, X,
the order is final, but if the record reveals the existence of parties or
claims not mentioned in the order, the order is not final,@ unless it is made final by its own language.[15]  In Penn, an examination of the record
revealed no intent that the plaintiff expected to serve the unserved
defendant, and this Court correctly regarded the judgment as final.

In the instant case an examination of the record
affirmatively reveals that the order granting summary judgment was final.  Rape, in her original petition, stated A[t]he location for service of Defendant
Charlie Smith is unknown at this time, so no citation is requested.@ 
After the trial court granted summary judgment, Rape appealed, but did
not indicate in either the trial court or the court of appeals that she
expected to serve Smith and, therefore, that the summary judgment was not
final.  Additionally, both Rape and M.O.
Dental Lab agreed in their briefs to the court of appeals that Smith was never
served with process in this case.  Thus, as
we said in Lehmann, the record Aillumin[ates] whether an order . . . that all
parties appear to have treated as final may be final despite some vagueness in
the order itself.@[16]

Our decision in Park Place Hospital v. Estate
of Milo[17]
is not inconsistent with Penn regarding defendants who have not been
served.  In Milo a summary
judgment did not dispose of claims against a defendant who had not been served
or against another defendant that the plaintiff had non-suited.  No order dismissing the suit as to the latter
defendant had been signed, and the summary judgment did not contain a AMother Hubbard@
clause.[18]  We held that Athe
appellate timetable could not be triggered until a signed, written order of the
court dismissed [the nonsuited defendant].@[19]  We continued, AUntil the trial court rendered its severance order, the
summary judgment for the hospital, [a physician, and a nurse] did not become
final and appealable.@[20]  We did not discuss whether the plaintiff
expected to serve the defendant who had not been served or whether the summary
judgment could or could not have become final without severance as to that
defendant.  The court of appeals= disposition of the case before us
today is not at odds with our holding in Milo.

Because we agree with the court of appeals that
our holding in Penn controls this case and was not altered by Milo
or our more recent ruling in Lehmann, we
conclude that the trial court=s
order granting summary judgment is final for the purposes of this appeal.  We now turn to the merits of the appeal.  Summary judgment under Rule 166a(b) is proper when there are no disputed issues of
material fact and the movant is entitled to judgment
as a matter of law.[21]  On review, we take as true all evidence
favorable to the nonmovant and indulge every
reasonable inference and resolve any doubts in the nonmovant=s favor.[22]

In a premises liability case, the duty owed to the
plaintiff depends on the status of the plaintiff at the time of the incident.[23]  The parties here do not dispute that Rape was
an invitee to the M.O. Dental Lab when the incident in question occurred.  To prevail in a premises liability case, an
invitee must plead and prove, among other elements, that a condition on the
premises posed an unreasonable risk of harm to the invitee.[24]  We held in both Brownsville Navigation
District and Johnson County that ordinary mud or dirt in its natural
state can and often does form a condition posing a risk of harm, but not an Aunreasonable@
risk of harm.[25]  We further observed in Johnson County that
holding a landowner liable for A[t]he
natural state of dirt@
would cause the landowner to Abe
an insurer against all injury to a tenant=s
lessees.@[26]  Although the court of appeals correctly
pointed out that neither Brownsville Navigation District nor Johnson
County specifically involved the accumulation of mud on a man-made surface,[27] we find
this distinction immaterial.  Ordinary
mud that accumulates naturally on an outdoor concrete slab without the
assistance or involvement of unnatural contact is, in normal circumstances,
nothing more than dirt in its natural state and, therefore, is not a condition
posing an unreasonable risk of harm.

Holding a landowner accountable for naturally
accumulating mud that remains in its natural state would be a heavy burden
because rain is beyond the control of landowners.  Most invitees in Texas will encounter natural
conditions involving ordinary mud regularly, and accidents involving naturally
accumulating mud and dirt are bound to happen, regardless of the precautions
taken by landowners.  Generally, invitees
like Rape are at least as aware as landowners of the existence of visible mud
that has accumulated naturally outdoors and will often be in a better position
to take immediate precautions against injury. 
Finally, following the rationale of Johnson County, to hold
otherwise would make the landowner strictly liable for injuries resulting from
ordinary mud or dirt in its natural state. 
The ordinary mud found on the concrete slab outside of the M.O. Dental
Lab accumulated due to rain and remained in its natural state; thus, as a
matter of law, it was not a condition that posed an unreasonable risk of harm
to Rape necessary to sustain her premises liability action.

For the foregoing reasons, we
hold that the trial court appropriately granted the defendants= motion for summary judgment.  The defendants do not challenge the court of
appeals=
disposition of Rape=s
negligence claim.  We accordingly grant
the defendants= petition
for review and, without hearing oral argument,[28] reverse
the court of appeals=
judgment in part and remand this case to the trial court for further
proceedings.

 

OPINION DELIVERED: July 2, 2004











[1] 95
S.W.3d 712, 715.





[2] Id. at
719.





[3] Id.





[4] 926
S.W.2d 284 (Tex. 1996).





[5] 829
S.W.2d 159 (Tex. 1992).





[6] 95
S.W.3d at 718.





[7] Id. at
719.





[8] N.Y. Underwriters Ins. Co. v. Sanchez, 799 S.W.2d 677, 678 (Tex. 1990).





[9] 39
S.W.3d 191, 195 (Tex. 2001).





[10] 363
S.W.2d 230, 232 (Tex. 1962).





[11] 95
S.W.3d at 715.





[12] Penn, 363 S.W.2d at 232.





[13] Lehmann,
39 S.W.3d 191.  But
see Wilkins v. Methodist Health Care Sys., 108 S.W.3d 565, 569 n.12 (Tex.
App.BHouston [14th Dist.] 2003, pet.
granted) (AIt is unclear whether Youngstown
survives Lehmann v. Har-Con
Corp.@ (citing Rape v. M.O. Dental Lab,
95 S.W.3d at 715)).





[14] 39
S.W.3d at 205-06.





[15] Id.
at 206.





[16] Id.





[17] 909
S.W.2d 508 (Tex. 1995).





[18] Id. at
510.





[19] Id.





[20] Id.





[21] Tex. R. Civ. P. 166a(c).





[22] Tex. Commerce Bank, N.A. v. Grizzle, 96 S.W.3d 240, 252 (Tex. 2002).





[23] See, e.g.,
Rosas v. Buddies Food Store, 518 S.W.2d 534, 536 (Tex. 1975); Carlisle
v. J. Weingarten, Inc., 152 S.W.2d 1073, 1074 (Tex. 1941).





[24] CMH Homes, Inc. v. Daenen, 15 S.W.3d 97, 99 (Tex. 2000).





[25] Johnson
County Sheriff=s Posse, Inc. v. Endsley, 926 S.W.2d 284, 287 (Tex. 1996) (AThe natural state of dirt, that it may
be slippery when wet or may contain small rocks, can present a hazard under the
right conditions, but not unreasonably so.@); Brownsville Navigation Dist. v. Izaguirre, 829 S.W.2d 159, 160 (Tex. 1992) (APlain dirt which ordinarily becomes
soft and muddy when wet is not a dangerous condition of property for which a
landlord may be liable.@).





[26] 926
S.W.2d at 287.





[27] 95
S.W.3d at 718.





[28] Tex. R. App. P. 59.1.